*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

## THE SUPREME COURT OF THE STATE OF ALASKA

PETER R.,

               Appellant,

    v.

B.M.R., a Minor,

               Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

Supreme Court No. S-18973

Superior Court No. 3AN-23-02414 CI

O P I N I O N

No. 7780 – August 1, 2025

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Ian Wheeles, Judge.

Appearances: Gregory S. Parvin, Law Office of Gregory S. Parvin, Wasilla, for Appellant. Notice of nonparticipation filed by M. Elizabeth Varela, Matanuska Law LLC, Palmer, for Appellee.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

BORGHESAN, Justice.

## I.     INTRODUCTION

At a family gathering, a nine-year-old boy lifted his grandmother up in the air, causing her to fall to the ground and suffer great pain. The boy's father pushed the boy to the ground to show him, as the father later testified, "how it felt to be Grandma." The boy's mother sought a domestic violence protective order (DVPO) against the father on the boy's behalf. The superior court granted the order, finding that the father

had assaulted the boy.  The court rejected the father's argument that the push was reasonable parental discipline, an affirmative defense to the crime of assault.

On appeal the father argues that the evidence did not support a finding of assault and that the judge erred by rejecting his defense.  Seeing no error, we affirm the superior court's judgment.

## II.    FACTS AND PROCEEDINGS

Peter R. and his ex-wife Rachael R. have two children together.  At the time of the events in this case, the elder child, Brett, was nine years old.[1]  After Peter and Rachael divorced, Peter married Jessica R., and they had a child together.

In early September 2023, Peter, Jessica, and the three children went to Peter's mother's house for a visit.  According to Peter, he drank "maybe three" beers before the visit that afternoon.  During the visit, Brett attempted to lift his grandmother up in the air despite her protests.  Brett caused his grandmother to fall on her back, causing her great pain.

Later, after Peter, Jessica, and the children arrived home, Peter told Brett to stay outside.  Jessica rushed the other children inside.  Peter later testified that he "pushed [Brett] down to the ground" and told Brett, "That is how it felt to be Grandma." Brett cried.  Rachael later testified that Brett had scrape marks on the back of his thigh after the incident.  A photo of the scrapes was entered into evidence.

Rachael filed a petition for a DVPO on Brett's behalf against Peter.  A short-term DVPO was granted.  The Office of Children's Services (OCS) investigated the incident, but did not find that it amounted to domestic violence.

After a hearing, the superior court found that Peter's actions amounted to an assault.  The court acknowledged that it was "a very difficult position to be in, to judge other people's parenting."  It explained that "[c]orporal punishment is not illegal"

---

[1]    We use a pseudonym for the child's name and initials for the parties' last names to protect the family's privacy.

and that there is nothing "necessarily wrong with or immoral" in using "physical means of discipline that are appropriate." But the court found that Peter's actions were not reasonable corporal discipline:

> By all accounts, you should have calmed down, collected yourself, and had an intelligent, mature conversation with your son. . . . [But] the testimony was that you were yelling, and your wife had to take your daughters out of the area, and as I heard the evidence and it was characterized to me, because she didn't want them to see or hear whatever you were going to say or do.
>
> . . . And what you have said was you pushed your son down because that, in your mind, was an acceptable way to teach him a lesson about how Grandma felt.
>
> That's not discipline. That's some kind of retribution, and it's really poor judgment. And it is an assault. It's you attacking someone because someone else got hurt. And not even in an equal measure. You're doing something that's much more forward and meant to cause pain because, by your own testimony, you wanted him to feel what Grandma felt.
>
> That's not parenting, and that's not an appropriate way to teach a nine-year-old anything.

At the same time, the court noted that Jessica's testimony had shown that Peter "can be a great dad and a great guy, and there's lots of good things about [him]." The court expressed hope that Peter, Rachael, and their children could "talk after today and figure out where things go from here in a positive way that gets [Peter] back in the kids' lives in a normal, regular way." The court granted Brett a long-term DVPO against Peter.

Peter moved for reconsideration, arguing that there was not sufficient evidence to establish assault and that Peter's actions were permissible corporal discipline. The court denied reconsideration.

Peter appeals.

## III.    DISCUSSION

Peter appeals the DVPO by challenging the court's finding that he committed an act of domestic violence against Brett.[2]  He argues that there was not sufficient evidence that his conduct amounted to assault.  Alternatively, he argues that his conduct was justifiable as reasonable corporal discipline.  This is a defense to conduct otherwise amounting to assault if the parent uses "reasonable and appropriate nondeadly force" on a child "[w]hen and to the extent reasonably necessary and appropriate to promote the welfare of the child."[3]  Although the DVPO has already expired, potentially mooting Peter's appeal, we review the superior court's decision due to its potential impacts on the parents' ongoing custody case.[4]

### A.    The Evidence Was Sufficient To Support An Assault Finding.

"A person commits the crime of assault in the fourth degree if . . . that person recklessly causes physical injury to another person."[5]  Because there was

---

[2]    A court may enter a DVPO if it finds "by a preponderance of evidence that [a] respondent has committed a crime involving domestic violence against [a] petitioner."  AS 18.66.100(b).  An assault against a family member can qualify as a crime of domestic violence.  *See* AS 18.66.990(3)(A) (defining "crime involving domestic violence" to include crime "by a household member against another household member" under AS 11.41); AS 11.41.230 (defining in fourth degree assault).

[3]    AS 11.81.430(a)(1).

[4]    The long-term DVPO was dissolved on the court's own motion in May 2024, approximately seven months after the DVPO was issued.  The expiration of the order would normally moot the appeal. *Peter A. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 146 P.3d 991, 994 (Alaska 2006).  But the collateral consequences doctrine "allows courts to decide otherwise-moot cases when a judgment may carry indirect consequences in addition to its direct force, either as a matter of legal rules or as a matter of practical effect." *Reed S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 522 P.3d 182, 188 (Alaska 2022) (quoting *Peter A.*, 146 P.3d at 994-95) (internal quotation marks omitted).  There is a rebuttable presumption against awarding custody to a parent with a history of perpetrating domestic violence in Alaska which also applies during modification proceedings. *Williams v. Barbee*, 243 P.3d 995,

evidence that Peter caused Brett physical injury and acted recklessly with regard to that possibility, the superior court did not clearly err by finding that Peter assaulted Brett.[6]

### 1. There was sufficient evidence that Peter caused Brett injury.

Peter argues that there was insufficient evidence to establish that Brett suffered physical injury as a result of the push. Physical injury means "physical pain or an impairment of physical condition."[7]

In support of this argument, Peter asserts that he was not aware that Brett sustained an injury, that Brett's scratches might have been caused by playing or sports, and that Brett himself did not testify about being hurt. Peter also suggests that Brett may have cried from embarrassment or regret rather than from pain.

Peter characterizes the evidence in the light most favorable to his position, but this is not enough to show that the superior court clearly erred. Generally, we will not overturn factual findings based on conflicting evidence.[8] In this case there is sufficient evidence to show that Peter caused Brett to suffer pain. Peter testified that he pushed Brett to the ground to show Brett "how Grandma felt." And Peter himself described his mother's fall as causing her serious pain. Therefore, Peter's own testimony suggests that he pushed Brett with enough force to cause him serious pain. Although Brett might have cried from embarrassment, the superior court could

---

1001-02 (Alaska 2010). Because the DVPO could have collateral consequences in a custody dispute between Brett's parents, we address the merits of this case.

[5]     AS 11.41.230(a).

[6]     We review the superior court's factual findings for clear error. *Cooper v. Cooper*, 144 P.3d 451, 454 (Alaska 2006). "A finding is clearly erroneous if we are 'left with a definite and firm conviction that a mistake has been made after review of the entire record.'" *State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs. v. Dara S.*, 458 P.3d 90, 98 (Alaska 2020) (quoting *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003)).

[7]     *See* AS 11.81.900(b)(49).

[8]     *Martin N.*, 79 P.3d at 53.

reasonably have found that he cried from pain. This evidence was enough to support the superior court's finding.[9]

> **2.** **There was sufficient evidence that Peter recklessly disregarded a substantial and unjustifiable risk of causing injury.**

To make a finding of assault, the court must find that a person acted recklessly with respect to the risk of physical injury.[10] A person acts recklessly with regard to a result or circumstance "when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists."[11] Disregarding the risk must be "a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[12]

Peter argues that there was insufficient evidence to support a finding that he was reckless. He emphasizes that it was just a "single push" and relies on OCS's investigation, which did not substantiate a finding of domestic violence.

We are not persuaded. There was evidence that Peter was angry when he pushed Brett and that he had been drinking earlier in the day. And his own testimony was that he pushed the boy to the ground to show him "how Grandma felt" when her fall had caused her serious pain. We see no legal error in the superior court's conclusion that a grown man angrily pushing a nine-year-old child to the ground with the express purpose of causing serious pain created a substantial risk of physical injury. The conclusion is consistent with our recent decision in *Adam F. v. Caitlin B.*, in which we affirmed the court's finding that a man acted recklessly regarding the risk of physical injury when he lifted his partner off the ground and dropped (or threw) her during an

---

[9] *See* AS 11.81.900(b)(49) (including "physical pain" in definition of physical injury).

[10] AS 11.41.230(a); AS 11.81.900(a)(3).

[11] AS 11.81.900(a)(3); *accord Adam F. v. Caitlin B.*, 551 P.3d 553, 563-64 (Alaska 2024).

[12] AS 11.81.900(a)(3).

argument.[13]  Therefore, we affirm the superior court's finding that Peter assaulted Brett.[14]

## B. The Superior Court Did Not Err In Rejecting Peter's Reasonable Corporal Discipline Defense.

A parent's use of force against a child that meets the definition of assault may be justified as reasonable corporal discipline.[15]  This justification defense entails two elements:  (1) a parent "may use reasonable and appropriate nondeadly force" on a child (2) "[w]hen and to the extent reasonably necessary and appropriate to promote the welfare of the child."[16]  It is an affirmative defense.[17]

Whether an affirmative defense is established is a mixed question of law and fact.  For example, in cases where self-defense is invoked, the court of appeals has held that "the question for the fact-finder is whether the amount of force used by the defendant was reasonable under the circumstances."[18]  But the precise meaning of the

---

[13]  *Adam F.*, 551 P.3d at 559, 563-64.

[14]  Assault can also be shown if "by words or other conduct" a person "recklessly places another person in fear of imminent physical injury." AS 11.41.230(a)(3).  The superior court did not specify whether it determined that assault occurred due to actual physical injury, fear of imminent physical injury, or both. Because we hold that the evidence was sufficient to show Peter recklessly caused Brett physical injury, we need not consider whether there was also sufficient evidence that Peter recklessly placed Brett in fear of imminent physical injury.

[15]  *See* AS 11.81.300; AS 11.81.430(a)(1).

[16]  AS 11.81.430(a)(1).

[17]  *See* AS 11.81.900(b)(2) (defining "affirmative defense" in criminal law as one where evidence is admitted which places defense in issue and where defendant has burden of establishing defense by preponderance of the evidence).

[18]  *Ledbetter v. State*, 482 P.3d 1033, 1036 (Alaska App. 2021).

statutory elements of an affirmative defense are questions of law that we review de novo.[19]

Peter seems to argue that because he did not use force that caused serious injury or posed substantial risk of physical harm, his force was "reasonable and appropriate nondeadly force."[20] He also appears to dispute the court's finding that he was motivated by retribution, describing the court's finding as a "subjective interpretation" and arguing that there was "no evidence that Peter's intentions were malicious or vindicative." We are not persuaded by these arguments.

We first address Peter's argument about the degree of force, which appears to be a statutory interpretation argument. To satisfy the first element of the justification statute, it is not enough to show that the force used was "nondeadly."[21] The force must also have been "reasonable and appropriate."[22] Therefore, even though the force Peter used was nondeadly, we see no legal error in the superior court's conclusion that it was not "reasonable and appropriate" when, as the court found, it was intended to cause serious pain and motivated by outrage or desire for revenge.[23] And as we have already explained, there was sufficient evidence to support the court's finding that the

---

[19]     *See Jones-Nelson v. State*, 512 P.3d 665, 671-73 (Alaska 2022) (examining whether jury instruction on self-defense correctly described statutory elements of self-defense).

[20]     AS 11.81.430(a)(1).

[21]     "Nondeadly force" means force less than that known to cause "a substantial risk of causing death or serious physical injury." AS 11.41.900(b)(17), (41).

[22]     AS 11.81.430(a)(1).

[23]     Peter cites *John E. v. Andrea E.* to argue that discipline does not extend to actions that cause serious injury or create a substantial risk of harm. 445 P.3d 649 (Alaska 2019). In that case, which involved more extreme corporal discipline than this case, we did not suggest that less extreme conduct should necessarily be found reasonable. *Id.* at 651-53, 658. Moreover, in *John E.* we were faced with application of a different statutory provision, AS 25.24.150(h), which uses the term "serious physical injury." *Id.* at 655-57.

push was intended to cause and capable of causing serious pain. As explained above, Peter's own testimony was that he pushed Brett to show him "how Grandma felt" when her fall had caused her serious pain. Brett, although nine years old, was a hockey player, was "getting bigger," and was "kind of an athletic kid." This suggests that a hard push would be required to knock Brett to the ground.

We next address the superior court's finding that the force used was not for an appropriate reason. The superior court found that Peter's actions were "retribution"[24] and done in "poor judgment" to teach Brett a lesson about "how Grandma felt." Peter argues that the superior court applied an incorrect legal standard because "[a] parent's poor judgment is not the standard for determining whether they perpetrated acts of domestic violence, nor is the distinction between parental discipline and retribution a controlling legal concept." But viewed in context, the superior court's statements reflect its finding that Peter acted out of anger and to seek revenge, rather than to reform Brett's behavior. This finding about Peter's mental state supports the court's finding that the force used was not "appropriate," as required by the statute.

Peter argues that the reasonableness of corporal discipline should be considered under the totality of the circumstances. The court of appeals has held, and we agree, that "in considering whether [a parent's] conduct [is] justified as appropriate parental discipline, the jury [is] entitled to rely on the totality of the circumstances."[25] That appears to be what the superior court, acting as the fact-finder in this case, did. The court considered that Peter had been drinking, that he was angry, that his wife did not want the other children to see what Peter would do to Brett, and that he intended to cause Brett substantial pain. Peter emphasizes that he did not cause any significant

---

[24] Black's Law Dictionary defines retribution to mean "[s]evere punishment for criminal behavior, esp[ecially] as a means of expressing societal outrage or the need for revenge." *Retribution*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[25] *S.R.D. v. State*, 820 P.2d 1088, 1095 (Alaska App. 1991).

injury to Brett, but this factor is not dispositive and does not override the other circumstances the superior court relied on in finding that the force used was not reasonable or appropriate. Therefore, we affirm the superior court's finding that Peter's act amounted to an unjustified assault.

## IV.   CONCLUSION

We AFFIRM the judgment of the superior court.